| | | |
|---|---|---|
| DARNELL RIALS, | ) | |
| | ) | |
| Petitioner, | ) | No. 12 C 05342 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| RICK HARRINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Darnell Rials has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254,[1] challenging his 2006 convictions for first-degree murder and personal discharge of a weapon. R. 1, Habeas Pet. For the reasons that follow, his petition and a certificate of appealability are denied.

## I. Background

A federal habeas court presumes that the factual findings made by the last state court to decide the case on the merits are correct, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Rials has not rebutted this presumption, so the following sets forth the facts underlying Rials's state criminal conviction.

On November 26, 2000, at about 2:30 a.m., Lennie Ramsey and her boyfriend, Earl Cribbs, heard a loud crash outside their home. *People v. Rials*, No. 1-06-2873, slip

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 2241.

op. at 2 (Ill. App. Ct. Oct. 9, 2008), *available at* R. 14-1, State's Exh. A.[2] A blue van had crashed into several of the Ramseys' cars. *Id.* Cribbs went to the front door and Ramsey heard him yell to someone, "Hey, come back here!" *Id.* Lennie then heard a pop that sounded like a gunshot. *Id.* When she went to the front porch, she found Cribbs lying on the ground and bleeding from his neck or mouth. *Id.* She screamed and yelled for her daughter to call 911. *Id.*

Petitioner Darnell Rials was arrested and charged with first-degree murder for the shooting of Earl Cribbs. *Id.* at 1. His first trial (a jury trial) resulted in a mistrial when the jury could not reach a unanimous verdict. *Id.* Rials was then re-tried in a bench trial in 2006. *Id.*

At the bench trial, the State presented three eyewitnesses to the shooting. The first, Brent Burchett (Cribbs's neighbor), testified that he was in his house when he heard a loud bang from the street. *Id.* at 2. He looked out his hallway window and saw that a blue van had crashed into two cars on the street. *Id.* Burchett went to the living room in the front and looked out of his bay window, where he saw a man dressed in dark-colored pants, a light shirt, and a long, tan-brown trench coat walk from the van toward the sidewalk. *Id.* He then heard Cribbs shout, "You hit my car," to which the man in the trench coat yelled back, "Fuck you." *Id.* Burchett recognized the voice as belonging to a man nicknamed "Caveman Mike," whom Burchett identified in court as Rials. *Id.* According to Burchett, after shouting at Cribbs, Rials whirled, pulled a

---

[2]This is the last state court opinion to fully lay out the facts of Rials's conviction.

chrome shotgun from his coat and fired toward Cribbs's house. *Id.* Rials then ran south, hiding his gun in his coat. *Id.* After reviewing a photo array, Burchett identified Rials as the shooter. *Id.* at 3.

Another man who lived with Burchett, Michael Gayden, testified that he also heard a crash outside his bedroom window that night. *Id.* at 2, 3. When he opened the window, he saw that Cribbs's car had been hit by a blue van. *Id.* at 3. Gayden saw a man, wearing a long, light-brown trench coat, come out of the blue van. *Id.* Cribbs shouted at him, "Where you going?" *Id.* The man in the trench coat answered back, "Oh, fuck you," as he turned and fired a shotgun at Cribbs. *Id.* The shooter then walked toward Gayden's building, where he saw Gayden looking through the window and raised his shotgun toward Gayden. *Id.* Gayden ducked down and left his bedroom to look out the dining room window. *Id.* From the window, he saw the shooter walk across a vacant lot. *Id.* After viewing a photo array, Gayden identified Rials, who was known to him as "Caveman Mike," as the shooter. *Id.* Gayden also identified Rials in a lineup and in court. *Id.*

The last eyewitness, Willard Thomas, testified that he was watching television in his house when he heard a loud crash at about 2:30 a.m. *Id.* at 4. He went to the front door and saw that a blue-and-white van had crashed into two other cars belonging to his neighbor. *Id.* After telling his mother to call the police, Thomas heard another boom that sounded like a gun. *Id.* He looked out the front door and saw "Caveman Mike" standing in front of Cribbs's home holding a long, silver shotgun. *Id.* "Caveman Mike" then turned and started running south. *Id.* He was wearing a long,

dark-colored trench coat. *Id.* Thomas testified that he had known "Caveman Mike" for around fifteen years, and he identified Rials in court as "Caveman Mike." *Id.*

The State also called several witnesses who did not see the shooting but provided other evidence connecting Rials to the shooting. Vivian Siddiqui testified that she was a longtime friend of Rials's and picked him up at about 11 p.m. on the night of the shooting. *Id.* at 4. Rials was wearing a tan-and-white outfit and a long, tan coat. *Id.* Siddiqui dropped Rials off about two hours later and did not see him until around 3 p.m. at his niece's house, where he seemed upset and afraid. *Id.* at 4-5. Willie Mae Shorter testified that Rials had been an occasional customer at her bar. *Id.* at 5. Shorter testified that on the night of the shooting, Rials came into the bar and argued with the bartender. *Id.* He stayed in the bar for awhile, but left at about 12 a.m. or 1 a.m. *Id.* He drove away in a blue Chevrolet van. *Id.* Finally, the responding police officers testified that the crashed blue van had a "peeled" steering wheel, which allowed someone to start the vehicle by bypassing the ignition. *Id.* There were no keys in the van. *Id.* After the van was impounded and processed, 31 latent prints were recovered in the van, but none of them matched Rials's prints. *Id.*

In his defense, Rials impeached the eyewitnesses. In exchange for testimony in Rials's case, Burchett pled guilty to a federal gun charge and was sentenced to the minimum term of 15 years' imprisonment. *Id.* at 3. Burchett understood that in exchange for his truthful testimony in this case, the U.S. Attorney's Office had the discretion to recommend a further reduced sentence on the gun charge. *Id.* As for Gayden, he had two prior felony convictions for possession of a controlled substance.

*Id.* And Gayden also had a pending criminal case in which a bond forfeiture and a no-bail warrant were issued. *Id.* But the day after the shooting, a motion to vacate the bond forfeiture was filed, which the court granted. *Id.* The parties also stipulated that a detective would have testified that when she interviewed Gayden about the shooting three weeks afterward, Gayden never told her that the shooter raised the shotgun in his direction, pointed the shotgun up toward Gayden while fleeing, or even that Gayden opened his window and stuck his head outside to take a look. *Id.* at 3-4. Finally, the defense called a detective who testified that he spoke with Thomas on the day of the shooting; Thomas told the detective that he saw the shooter and gave a general description, but did not name the shooter. *Id.* at 5. It was not until April 2004—three-and-a-half years after the shooting—that Thomas named "Caveman Mike" as the shooter after Thomas was approached by police officers at his workplace. *Id.* at 4.

At the conclusion of Rials's bench trial, the trial judge found Rials guilty of first-degree murder and personal discharge of a weapon, and sentenced him to consecutive sentences of 35 years and 25 years, respectively. *Id.* at 6; Habeas Pet. at 1.

After state direct and post-conviction appeals, Rials filed a federal habeas petition in this Court. In his petition, he brings four claims. First, the trial court allegedly convicted him on "materially untrue assumptions or misinformation when it failed to correctly recall the evidence during its determination of guilt." Habeas Pet. at 5. Second, Rials claims that the trial court erroneously decided that it needed to hear his testimony at trial before it could admit or bar evidence of his prior convictions

for impeachment purposes, which denied him his constitutional right to testify in his defense. *Id.* Third, Rials argues that the trial court erroneously permitted the State to present prejudicial "other crimes" evidence. *Id.* at 6. Finally, Rials asserts that his trial counsel was constitutionally ineffective for failing to forensically test a reddish-brown stain and a footwear impression that were found in the blue van at the crime scene. *Id.* The State has asked this Court to deny Rials's petition. R. 13, State's Resp.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). If a petitioner has failed to properly assert his federal claims at each level of state review, his claims are procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). A claim is also procedurally defaulted when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). But a habeas petitioner may overcome procedural default either by demonstrating cause for the default and actual prejudice from the default, or by

showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Relevant here, a fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, procedural default, although otherwise an absolute prerequisite to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet, then a federal court can consider the merits of his federal habeas claims. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law" or "if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Alternatively, under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 413. But just because a federal court independently concludes that the relevant state-court decision applied clearly established federal law erroneously does not mean that the court may grant the writ; rather, the state court's application must be objectively

unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

### III. Analysis

In responding to Rials's habeas petition, the State argues that each claim is procedurally defaulted or alternatively meritless. *See* State's Resp. at 16-35. It is now time to review each habeas claim.

### A. Insufficiency of the Evidence

Rials first asserts that the trial court erred by convicting him despite incorrectly summarizing the evidence against him. Habeas Pet. at 5. Specifically, according to Rials, the trial judge believed that Willard Thomas had identified Rials to the police soon after the shooting, even though Thomas actually identified Rials three-and-a-half years later. *See id.* at 8. After Rials raised this argument on his direct appeal, the state appellate court rejected the argument, viewing it as a challenge to the sufficiency of the evidence against him at trial and rejecting it. *See Rials*, No. 1-06-2873, slip op. at 6-7. Rials argues that this too was error. Habeas Pet. at 5.

At the outset, the state appellate court was not wrong in viewing Rials's challenge as an insufficient-evidence argument. Although the transcript of the trial judge's ruling shows that he did mix up the timing of Thomas's identification of Rials specifically as "Caveman Mike" to the police, he did not convict Rials solely on the basis of Thomas's identification:

> The State argues flight delay. I don't know when Mr. Rials went to Los Angeles. *This case is one that you look at the totality of the circumstances. Each one of them* has identified the person as the shooter or at least seeing him with the shotgun just outside of Mr. Cribs' home wearing the outfit of the long trench coat and light colored pants that two have identified him as Caveman Mike.

R. 14-28, State's Exh. BB at NN 54 (emphasis added). To the contrary, the trial judge expressly looked to the entirety of the evidence, including how *all* of the eyewitnesses identified Rials as the shooter. And in fact, the judge even recognized that Thomas may have been reluctant to participate in the investigation, and discounted Thomas's testimony by at least a little bit. *See id.* ("Mr. Thomas did not want to get involved. I would take that, as I stated, if he was alone, it would be a very difficult identification. He did come and he does make that identification."). For good measure, the judge finally explained that he was finding Rials guilty because "the State has, *in the totality of the circumstances* . . . met their burden." *Id.* So the appellate court correctly rejected Rials's argument that the trial judge failed to accurately recall the timing of Thomas's identification, and correctly viewed the argument as a challenge to the sufficiency of all of the evidence against him.

The sufficiency argument fails to justify habeas relief. Under *Jackson v. Virginia*, evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find that the evidence proves the essential elements of the offense beyond a reasonable doubt. 443 U.S. 307, 319 (1979). This is the exact rule that the state appellate court applied, even if it did not cite *Jackson* directly. *See Rials*, No. 1-06-2873, slip op. at 7 (citing *People v. Pearson*, 756 N.E.2d 438, 442 (Ill. App. Ct. 2001), for the principle that "a reviewing

9

court will uphold a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). The state appellate court applied the correct legal rule to Rials's challenge, so its decision was not contrary to clearly established Supreme Court law. Rials has not met the first prong of AEDPA.

The question then becomes whether the state appellate court unreasonably applied *Jackson*. More precisely, whether it was objectively unreasonable for the state appellate court to conclude that any rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of first-degree murder beyond a reasonable doubt. *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003). At Rials's bench trial, the evidence consisted of three eyewitnesses—all neighbors of Cribbs—who testified that they each saw and/or heard a man crash a blue van into Cribbs's car, curse at Cribbs, and fatally shoot Cribbs with a shotgun. *Rials*, No. 1-06-2873, slip op. at 2-4. They each saw that he wore a long trench coat (two people described it as tan or light-brown, while Thomas described it as dark-colored). *Id.* at 2-4. And they each recognized the shooter as "Caveman Mike," whom they identified as Rials in court and in lineups and photo arrays. *Id.* at 2-4. The State also presented two other witnesses—including one of Rials's friends—who testified that Rials was wearing a long tan trench coat and drove a blue van that night. *Id.* at 4-5. From this evidence (viewed in the light most favorable to the State), the state appellate court could very reasonably have concluded that a rational factfinder could find that Rials killed Cribbs with the intent to kill or do great bodily harm to Cribbs without

lawful justification, even after hearing the impeachment of the three eyewitnesses at trial. *See* 720 ILCS 5/9-1(a) (laying out the elements of first-degree murder); *cf. Cabrera v. Hinsley*, 324 F.3d 527, 534 (7th Cir. 2003) (explaining that intent in Illinois "may be proved circumstantially by inferences reasonably drawn from the circumstances of the defendant's conduct"). Because the state appellate court did not unreasonably apply *Jackson* to the evidence at Rials's trial, Rials's first habeas claim fails.

## B. Denial of Right to Testify

Rials did not testify at trial. In his second habeas claim, Rials argues that the trial court denied him his constitutional right to testify in his defense by reserving ruling on his motion *in limine* (which sought exclusion of his prior convictions for possession of a stolen vehicle and for burglary) until after Rials took the stand. *See* Habeas Pet. at 5, 14. This claim can be construed in two different ways. First, Rials might be arguing that the trial judge should have granted his motion in *limine*. Alternatively, Rials could be arguing that the trial judge should have decided his motion *in limine before* he decided not to testify, and this failure to decide the motion ahead of time violated due process by denying Rials the opportunity to make an informed decision whether to testify. The Court discusses each construction of Rials's habeas claim below.

### 1. Procedural Default

To the extent that Rials is asserting that the trial judge should have granted his motion *in limine* to exclude his prior convictions, that claim is procedurally defaulted.

11

Generally, a federal court may not review a habeas claim if the state court's prior rejection of that claim was based on an adequate and independent state law ground. *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010). A state law procedural ground is considered "independent" when the state court actually relied on the procedural bar (and not the claim's merits) as an independent basis for rejecting the habeas claim. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). But if the state court's rejection appears to rest primarily on the resolution of the merits of the habeas claim, or is interwoven with the merits and does not clearly and expressly rely on the procedural default, then the state law ground is not independent. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). Here, the state appellate court on direct appeal rejected this construction of Rials's habeas claim by straightforwardly applying an Illinois procedural rule: a defendant's failure to testify eliminates a trial court's refusal to rule as a reviewable issue. *See Rials*, No. 1-06-2873, slip op. at 7 (quoting *People v. Averett*, 886 N.E.2d 1123, 1139 (Ill. App. Ct. 2008)). This procedural rule was the principal ground given for rejecting the claim; the appellate court never reached the claim's merits. *See id.* Although the appellate court did go on to review Rials's claim for plain error, "an Illinois court does not reach the merits of a claim simply by reviewing it for plain error." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *see also Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003). So the state appellate court never reached the merits of this claim at all, much less intertwined the merits with a state procedural rule. The state procedural rule was therefore an independent bar for procedural-default purposes.

The Illinois rule was also an adequate basis to reject the claim because it was a firmly established and regularly followed state practice at the time it was applied. *See Smith*, 598 F.3d at 382. *Averett*—the case that the appellate court applied on direct review—itself cited a long string of cases going back to 1974 in support for the principle that a defendant's failure to testify eliminates a circuit court's refusal to rule on the admissibility of prior convictions as a reviewable issue. *See* 886 N.E.2d at 1140. And one of those cases cited, *People v. Phillips*, explained in turn that Illinois appellate courts have uniformly applied that rule at each opportunity. 864 N.E.2d 823, 828 (Ill. App. Ct. 2007) ("Our supreme court has never addressed the question of how to proceed on review when the trial court refuses to rule on admissibility of prior convictions and the defendant then declines to testify. But our appellate courts have. Six times. On each of those six occasions the court has held the defendant's failure to testify eliminates the trial court's refusal to rule as a reviewable issue."). The procedural rule that the appellate court applied in direct review was therefore a firmly established and regularly followed state practice at the time of the appellate court opinion, which issued in 2008. So if Rials is claiming that the trial judge should have granted his motion *in limine*, that claim is procedurally defaulted because it was denied by the state appellate court on an adequate and independent state-law ground.

Alternatively, if Rials is claiming that his trial judge's failure to decide his motion *in limine* deprived him of an informed decision not to testify, that claim is also procedurally defaulted, but for a different reason: it was never raised at trial, much less in a full round of state review. In Rials's first trial, his counsel had two chances to

orally argue the merits of his motion, but never asserted that delaying a decision on the motion would unfairly impact Rials's ability to decide whether to testify. *See* R. 14-20, State's Exh. T at W-3-10. And after the trial judge decided to reserve ruling on Rials's motion *in limine*, neither Rials nor his counsel argued that delay would affect Rials's ability to decide whether to testify. *See id.* at W-10-11. Even when the trial judge at his first trial went through an extensive colloquy with Rials—twice—about whether he was voluntarily and intelligently waiving his right to testify, Rials never said that the judge was impairing his right to intelligent waiver. *See* R. 14-24, State's Exh. X at FF-129-31; R. 14-26, State's Exh. Z at GG-10-13. Indeed, the first trial judge asked Rials if he had any questions about his right to testify or not testify, and Rials said he had none. State's Exh. Z at GG-13. In his retrial, moreover, Rials again told the new trial judge that he was exercising his right not to testify; he never said that he needed an answer to his motion *in limine* before deciding whether to testify. *See* State's Exh. BB at NN 3. Nor has Rials himself pointed to any occasion at either of his two trials where he or his attorney argued that they needed an answer to his motion right away. Accordingly, by never raising this claim at either trial, Rials defaulted it from the get-go. *See, e.g.*, *Woods*, 589 F.3d at 373 ("Before seeking habeas relief, a petitioner must fairly present his federal claims *at each level* of the state's courts for their review." (emphasis added)).

Although both constructions of Rials's habeas claim are procedurally defaulted, the default can be excused if Rials can establish cause and prejudice for the default, or if he can establish that the failure to consider the defaulted claims will result in a

fundamental miscarriage of justice. *Promotor*, 628 F.3d at 885. Rials does not go down the cause-and-prejudice route, but his reply brief, when liberally construed, does assert that he is entitled to the fundamental-miscarriage-of-justice exception. *See* R. 19 at 2 ¶ 5.

Under this exception, habeas claims of actual innocence may serve as "gateway[s] through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," *Herrera v. Collins*, 506 U.S. 390, 404 (1993), when petitioners accompany their claims of innocence with assertions of constitutional errors at trial. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). And construed broadly, that is what Rials does here: as in *Schlup*, Rials contends that his trial was rife with constitutional errors that are now procedurally barred. *See id.* at 306, 316; *see also* R. 19 at 2 ¶ 5 (citing *Schlup*). Thus, in order for this Court to review these procedurally barred claims, Rials must show that enforcing the procedural default would lead to a "fundamental miscarriage of justice." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Put differently, Rials "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Although a claim of actual innocence is "rarely successful," *id.* at 324, absolute certainty about Rials's guilt or innocence is not required to satisfy his burden at the gateway stage, *House*, 547 U.S. at 538. And the proper inquiry is not whether a particular juror would have the power to convict in light of the old and new evidence, but rather "how reasonable jurors would react to the overall, newly supplemented record." *Id.*

To succeed on an actual-innocence gateway argument, habeas petitioners must have enough evidence to meet the demanding standard. By way of examples (and examples only), such evidence could include "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). But here, Rials has produced *no* new evidence of his actual innocence, so the Court is left with the evidence the State mustered against him at his retrial. And as discussed above, a reasonable juror could have convicted Rials based on that evidence—which included three eyewitnesses who each saw and/or heard Rials shoot Cribbs and who each identified Rials to the police, and two other witnesses who corroborated the descriptions of Rials's clothing and vehicle—even after hearing the impeachment of the eyewitnesses. So Rials's showing of actual innocence falls short of the high bar that *Schlup* has set. *See McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1936 (2013) ("We stress once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." (internal quotation marks omitted)). And because Rials's evidence does not meet the *Schlup* standard, his evidence by definition cannot meet the high standard for a standalone claim of actual innocence, even assuming that Rials might

have been able to bring such a claim.[3] *See Herrera*, 506 U.S. at 417; *see also Schlup*, 513 U.S. at 316 ("Consequently, Schlup's evidence of innocence need carry less of a burden [than the evidence of actual innocence in *Herrera*]."). Rials's showing of actual innocence is therefore meritless and does not excuse his various procedural defaults; the miscarriage-of-justice exception does not apply.

## 2. Merits of the Reserved-Ruling Claim

Even if Rials had not defaulted his claim that the trial judge should not have reserved ruling on his motion in *limine*, he would still not be entitled to habeas relief, because the trial judge's decision did not violate clearly established federal law. *See, e.g.*, *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir. 2005) ("Allen Muth is not entitled to a writ of habeas corpus. There was no clearly established federal law in 2001 that would have made his conviction . . . unconstitutional."). Rials has cited to no Supreme

---

[3]A habeas claim of actual innocence is not necessarily noncognizable on habeas review. In *Herrera*, a majority of the Supreme Court reasoned that its "federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits even though his habeas petition would otherwise be regarded as successive or abusive." 506 U.S. at 416-17. But the Supreme Court did not hold that *no* claim of actual innocence can ever be cognizable on habeas review. Rather, the Supreme Court "assume[d], for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional." *Id.* at 417 (internal quotation marks omitted). Having made that assumption, the Supreme Court set the threshold showing for that hypothetical "truly persuasive demonstration" at an "extraordinarily high" level, and held that "[t]he showing made by petitioner in this case falls far short of any such threshold." *Id.* (internal quotation marks omitted); *see also Milone v. Camp*, 22 F.3d 693, 699-700 (7th Cir. 1994) ("The Supreme Court appears to be willing to hold that it is unconstitutional to execute a 'legally and factually innocent person,' while at the same time suggesting that the petitioner's evidentiary burden in such a case 'would necessarily be extraordinarily high.'"). Thus, it is *not* necessarily the case that actual innocence claims, in noncapital cases, are not cognizable at all. Rather, the Supreme Court has not yet definitively answered the question. But in any event, Rials has not asserted a claim of actual innocence as a standalone basis for habeas relief.

17

Court case holding that a defendant's waiver of his right to testify in his defense is not informed and voluntary if a trial court reserves ruling on prior-convictions impeachment until after he testifies. Nor has this Court been able to locate one with that precise holding.

In fact, the closest cases are *Luce v. United States*, 469 U.S. 38 (1984), and *Ohler v. United States*, 529 U.S. 753 (2000), which, if anything, go the other way. *Luce* actually held that a defendant *must* testify in order to raise and preserve for review a claim of improper impeachment with a prior conviction. 469 U.S. at 43. In so holding, the Supreme Court reasoned that requiring a defendant to testify allows the trial judge to balance the prejudicial impact of the prior conviction against its probative value in real-time by eliminating speculation about the defendant's testimony, *see id.* at 41-42, and the same goal is accomplished by an Illinois state-court practice of reserving an *in limine* ruling until the defendant testifies. Similarly, in *Ohler*, the Supreme Court held that a defendant who testifies but decides to draw out the sting of a prior conviction by introducing it on direct examination may not on appeal claim that the admission of the prior conviction was error. 529 U.S. at 760. In fact, Ohler even argued that applying this rule unconstitutionally burdened her right to testify, but the Supreme Court reasoned that this rule did not prevent her from taking the stand and presenting any admissible testimony that she wanted to. *Id.* at 759. Although the Supreme Court recognized that prior-convictions impeachment may deter a defendant from taking the stand, it was unmoved: "Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons

18

[like the possibility of impeachment with prior convictions] in deciding whether to testify." *Id.* at 759-60 (internal quotation mark omitted). So if the Supreme Court did not buy the argument that *certain* prior-convictions impeachment may impermissibly deter a defendant from taking the stand, it is unlikely to buy the argument that merely *possible* impeachment unconstitutionally burdens a defendant's choice to testify (or not). *Luce* and *Ohler* therefore demonstrate that there is no clearly established federal law that requires a trial judge to decide whether a defendant's prior convictions are admissible before he testifies. Accordingly, Rials's habeas claim therefore fails on the merits, even if it was not procedurally defaulted without excuse.

## C. Erroneous Admission of "Peeled" Steering Column

Third, Rials asserts that the trial court violated his due process rights by erroneously admitting "other crimes" evidence at his trial. Habeas Pet. at 6. Specifically, the trial judge allowed the State to introduce evidence that the crashed blue van had a "peeled" steering column. *Id.* at 17. Rials believes this evidence was overly prejudicial because it implied that Rials stole the van by bypassing the van's ignition. *See id.* But that amounts to an argument that the state court misapplied a state rule of evidence similar to Federal Rule of Evidence 403, and a federal habeas court may not review errors of exclusively state law, including state evidentiary law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, "[s]omething worse than a garden-variety violation of [evidentiary rules] must be shown to cross the constitutional threshold." *Watkins v. Meloy*, 95 F.3d 4, 7 (7th Cir. 1996); *see also Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001) ("Rather, we must consider

19

whether the alleged unfair prejudice stemming from this evidence firmly convinces us 'that but for the errors, the outcome of the trial probably would have been different,' thus denying the petitioner his due process right to a fundamentally fair trial."). In other words, the evidence must be so unreliable for its purpose that the admission of the evidence rises to a due process violation. This is a hard showing to make, as the Seventh Circuit has emphasized: "If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Watkins*, 95 F.3d at 7.

Rials has not cleared this high bar. The state appellate court, in rejecting this claim, held that any error was harmless in light of the admissible evidence against him. *People v. Rials*, No. 1-06-2873, slip op. at 8. This conclusion was not objectively unreasonable, especially in light of the limited prejudicial impact and limited purpose of the steering-column evidence. As to the prejudicial impact, given that Rials was on trial for first-degree murder, any risk of improper character-smearing was minimal. It was extremely unlikely that the trial judge convicted Rials for murdering Cribbs merely because the "peeled" steering column evidence suggested that Rials was a car thief. And more importantly, the State used that evidence not to smear Rials's credibility or character, but for a very specific purpose. In closing, the State argued that the steering column indicated that the blue van was stolen, which explained why there were 31 unmatched fingerprints recovered from the van but no fingerprints at all recovered from the area around the driver's seat: Rials stole the car and either

20

wiped the area clean before getting out of the car or was wearing gloves. *See* State's Exh. BB at NN 44-45 ("Just because there's no prints found in the driver's area, doesn't mean somebody wasn't driving the van and doesn't mean it wasn't him. It just means that it was a van that was stripped and somebody wiped down the area or was wearing gloves or was extra careful because it wasn't their van."). In other words, the State used the steering-column evidence to rebut Rials's defense—namely, that the 31 unmatched fingerprints showed that he was never in the van and at the scene of the crime (more on this later). This limited purpose did not overly prejudice Rials at trial. *Cf. Anderson*, 243 F.3d at 1055 ("If we were to do the balance, we would be hard pressed to conclude that the probative value flowing from the admitted weapons and ammunition was substantially outweighed by unfair prejudice, especially since in discussing the weapons during trial and in closing argument, the government focused only on its theory about the relevance of the weapons; the government did not argue that Anderson was a bad person because he kept guns . . . ."). As a result, the appellate court was not objectively unreasonable in holding that the admission of the steering-column evidence was not overly prejudicial. The evidence's admission did not violate Rials's due process rights.

### D. Ineffective Assistance of Trial Counsel

Finally, Rials argues that his trial counsel was constitutionally ineffective for failing to submit a reddish-brown stain and a footwear impression found in the crashed blue van for forensic testing. Habeas Pet. at 6, 22. Had his attorney submitted the

evidence for testing, Rials claims that it would have exculpated him by excluding him from the inside of the van (and thus the crime scene). *Id.* at 22.

To receive habeas relief on the merits of his ineffective assistance of counsel claim, Rials must meet the familiar two-prong, performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, he must show that his trial counsel's performance fell below an objective standard of reasonableness and that prejudice resulted. *Id.* at 687-88. Judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) ("Trial tactics are a matter of professional judgment, and . . . we will not play Monday or Tuesday morning quarterback when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case." (alteration in original) (internal quotation marks omitted)). On habeas review, this inquiry is *doubly* deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), but under AEDPA this Court must also defer

to the state court's application of *Strickland* unless it is objectively unreasonable,[4] *see Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

On the first prong, reasonableness of performance, the state appellate court that examined this claim on post-conviction review concluded that Rials's counsel's decision not to request forensic testing on the stain or footprint was a matter of sound trial strategy. *Rials*, No. 1-10-0123, slip op. ¶¶ 18-19. It noted that there was an equal chance that the testing could have matched Rials rather than excluded him (thus putting him at the scene of the crime). *Id.* ¶ 19. And it reasoned that counsel instead chose a reasonable strategy of attacking the credibility of the State's witnesses, some of whom had criminal records, cut a deal in exchange for their testimony, or were inconsistent in their eyewitness accounts to the police. *See id.* This conclusion was not objectively unreasonable. Although the State did not procure an affidavit from Rials's attorney in either the state post-conviction or federal habeas proceedings, thus leaving the state appellate court to infer that the decision not to test the stain and the footprint was actually a strategic decision by Rials's trial counsel, that inference was fair in light of two parts of the record. First, Rials submitted an unsworn affidavit along with his *pro se* post-conviction petition where he averred that he asked his counsel to test the evidence, but his counsel refused. *See* R. 14-8, State's Exh. H at C050. Even if this

---

[4]The state appellate court reviewing this claim applied the *Strickland* test, so any argument by Rials that the state court's decision was contrary to clearly established Supreme Court law fails. *See People v. Rials*, No. 1-10-0123, slip op. ¶ 17 (Ill. App. Ct. Nov. 3, 2011), *available at* R. 14-13, State's Exh. M ("Specifically, a defendant alleging ineffective assistance of counsel must show that it is arguable that counsel's performance fell below an objective standard of reasonableness, and arguable that defendant was prejudiced.").

Court were to overlook the fact that Rials did not execute his affidavit under the penalty of perjury, the affidavit itself avers that "Counsel . . . focused on the weakness in the state[']s case and did[ ]not effectively pursue the DNA evidence at my inst[r]uctions." *Id.* So Rials himself admits that his counsel strategically chose to focus on the weaknesses of the State's case-in-chief, which meant impeaching each of the three eyewitnesses (as discussed above) and arguing that the 31 unmatched fingerprints excluded Rials from the crime scene. And second, that the decision not to forensically test the stain and impression was strategic is also borne out by trial counsel's closing argument, part of which actually attacked the *State's* failure to test the stain and the footprint to argue that there was insufficient physical evidence to convict Rials and to argue that the investigation was shoddily done:

> Let me just talk briefly about that van because when we talk about corroboration, we talk about physical evidence that can corroborate things. Well, the physical evidence in this case, there were latent prints that were recovered that were suitable for comparison. They were compared to the inked print of Mr. Michael Rials. There was no match whatsoever. These were construction workers hats. There were coolers. There were cassette tape containers, various items, screwdrivers, you name it inside the car on the console, all over. Did you think that perhaps the detectives would have run it through? No, that's not their policy. They don't do this. You know that's not all, because there was a reddish brown stain, that's the term they usually use for blood. There was some blood evidence in that van. It wasn't tested. There was a foot print in that van and as you heard through stipulation, [J]udge that foot print comparison could have been compared to other foot prints, but that was never done. No weapon was ever recovered in this case. No ballistics were recovered in this case. The detective doesn't know where the van is now. That was probably destroyed. What does the State have?

State's Exh. BB at NN 40-41. So the record backs up the state appellate court's conclusion that Rials's attorney made a reasonable strategic decision to focus on the

weaknesses in the State's case-in-chief, especially in light of the chance that the evidence could have matched Rials.

The state appellate court also concluded that even if Rials's counsel's strategy was unreasonable, Rials suffered no prejudice because had the stain and footprint been tested and came back negative for Rials, that evidence would at most have been cumulative to the 31 unmatched fingerprints already taken from the van, especially in light of the weight of the other evidence against him. *See id.* ¶¶ 19-22. This too was not an unreasonable decision. Evidence is cumulative when it "goes to prove what has already been established by other evidence," *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) (internal quotation marks omitted), and here the 31 negative fingerprints had already placed Rials outside the van. A negative test on the other evidence would have just meant the same thing as the fingerprints. It might have been a different story had the stain and footprint been found in the driver's area specifically—then, a negative test result might have helped to exclude Rials (or point the finger at someone else) from the driver's seat where *no* fingerprint was ever lifted—but there is no evidence of that. *See* State's Exh. BB at MM 176-77 (stipulating only that the forensic investigator found the stain and footprint "in the van"). Indeed, because the State had the burden of proof and never ran its own tests on the stain and footprint (and thus had no positive test results to use against Rials in its case-in-chief), Rials was already in as good a position as he would have been had he tested the evidence himself with a negative result. The only way he could have *improved* his position is if he had tested the evidence and it matched someone else who actually had prior connections to Cribbs

or a motive to kill Cribbs. But Rials has never made that argument, as speculative as it is, at trial or otherwise. And that still leaves the strong evidence against him at trial, which the appellate court recognized. Overall, the appellate court was not objectively unreasonable in concluding that Rials suffered no prejudice, even had his counsel been ineffective in performance, so his last habeas claim also fails.

## IV. Conclusion

For the reasons discussed above, Rials's habeas petition [R. 1] is denied.

If Rials seeks to appeal the denial of his habeas petition, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the district judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). For the reasons discussed above, Rials has not made that substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Rials deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United*

*States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Not only were the procedural defaults proven by the record, and no exceptions applicable, but the claims that were decided on the merits were also well within the deference owed to state courts under AEDPA. The Court therefore declines to issue a certificate of appealability.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 16, 2013